**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                :
BEULAH MITCHELL,                :
                                :   CIVIL ACTION NO. 04-896 (MLC)
        Plaintiff,              :
                                :   MEMORANDUM OPINION
    v.                          :
                                :
NEW JERSEY LOTTERY, et al.,     :
                                :
        Defendants.             :
                                :
```

**COOPER, District Judge**

The defendants, New Jersey Lottery (the "Lottery") and
Virginia Bauer ("Bauer"), William Jourdain ("Jourdain"), Dolores
Matos ("Matos"), Marilyn Blazovsky ("Blazovsky"), Robert Kersey
("Kersey"), Gail Wright ("Wright"), and Christine Hairston
("Hairston") (collectively "the individual defendants"), move to
dismiss the amended complaint filed by the plaintiff pro se,
Beulah Mitchell (the "plaintiff"), for failing to state a claim
upon which relief may be granted, pursuant to Federal Rule of
Civil Procedure ("Rule") 12(b)(6).  Specifically, the defendants
seek to dismiss the plaintiff's (1) Title VII claim for racial
discrimination, (2) Title VII claims for hostile work environment
and retaliation, and (3) New Jersey Law Against Discrimination
("NJLAD") claims for racial discrimination, hostile work
environment, and retaliation.  The Court, for the reasons stated
herein, will (1) grant the part of the motion seeking to dismiss
the (a) Title VII claims for hostile work environment and

retaliation, and (b) NJLAD claims for racial discrimination, hostile work environment, and retaliation, and (2) deny the part of the motion seeking to dismiss the Title VII claim for racial discrimination.

## BACKGROUND

The plaintiff, an African-American woman, is an employee of the Lottery.  (Amended Compl., at 2, 4.)  The Lottery is part of the New Jersey Department of Treasury.  (Id. at 4.)  The plaintiff started working at the Lottery as a clerk in accounts receivable in 1983, and she was promoted to the position of Secretary Assistant 3 in approximately June 2000.  (Id. at 2-4.)  On October 31, 2002, the plaintiff received a promotional announcement for the position of "Secretarial Assistant 2 Non-Steno" (the "SA2 Position").  (Id. at 4.)

The plaintiff submitted her application for the SA2 Position on or about November 7, 2002.  (Id.)  The plaintiff, "[o]n or about March 26, 2003, . . . received [her] notification of eligibility for the [SA2 Position], and [she] ranked #1."  (Id. at 5; 9-9-03 Equal Employment Opportunity Commission ("EEOC") & New Jersey Division of Civil Rights ("NJDCR") Charge ("9-9-03 EEOC Charge").)  However, the plaintiff, "[o]n or about April 24, 2003[,] learned that [she] had not been selected for the [SA2 Position]."  (9-9-03 EEOC Charge.)  Instead, Mary L. Cleary ("Cleary"), a Caucasian woman, was selected for the SA2 Position.

2

(Id.; Amended Compl., at 5.)  The plaintiff, on or around August
26, 2003, "was temporarily reassigned to work under the
Supervision of [the defendant] Marilyn Blazovsky, Manager for
Operations and Organization Support."  (Amended Compl., at 5.)

The plaintiff filed a Charge of Discrimination with the EEOC
and NJDCR on September 9, 2003, claiming that she was subjected
to racial discrimination because Cleary, a Caucasian, was
promoted to the SA2 Position despite being the second-highest-
ranked candidate.  (9-9-03 EEOC Charge.)  The EEOC investigated
the charge and determined that it was "unable to conclude that
the information obtained establishes violations of the statutes."
(2-2-04 EEOC Dismissal and Notice of Rights ("EEOC Notice").)
The plaintiff filed her first complaint with the Court on
February 27, 2004.  (Dkt. entry no. 1.)  The Court dismissed the
complaint on July 22, 2005, for failing to state a claim upon
which relief can be granted, but permitted the plaintiff to file
an amended complaint.  (7-22-05 Mem.Op. & Ord.)

The plaintiff filed an amended complaint on October 7, 2005,
claiming that she was "unjustifiably criticized, not promoted,
separated from her former position . . . and otherwise treated
disparately . . . because of her race" in violation of Title VII
and NJLAD.  (Amended Compl., at 2.)  Further, the plaintiff
asserts that she was subjected to retaliation and a hostile work
environment.  (Id.)  Based on these contentions, she seeks to
have the Court:

3

(1) declare that [the] Lottery discriminated and
retaliated against her because of her race;

(2) [promote her to the] position of Secretary Assistant
I Non Steno, the position to which she would have
advanced but for [the defendants'] illegal conduct;

(3) [i]mmediately remove . . . Blazovsky and any other
agency official found responsible for discriminatory and
retaliatory treatment of [her] from any position which
enables them to discriminate and retaliate against any
employee;

(4) [e]njoin [the Lottery] from taking personnel actions,
evaluating employee's [sic] performance, placing
employees on performance improvement plans, separating
employees from employment, criticizing their performance,
providing false adverse employment references and
otherwise taking adverse employment actions against
employees because of their race and exercise of protected
activities; and

(5) [o]rder that all criticisms of [the plaintiff's] job
performance and work conduct issued since July 14, 1992
be stricken from all records.

(Id. at 12.)  The plaintiff also seeks money damages.  (Id.)

## DISCUSSION

### I.   Standard of Review for a 12(b)(6) Motion

A complaint may be dismissed for "failure to state a claim

upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  On a

motion to dismiss, the Court must accept as true all of the

factual allegations in the complaint, and draw all reasonable

inferences in favor of the plaintiff.  Doe v. Delie, 257 F.3d

309, 313 (3d Cir. 2001).  But a court need not credit a

complaint's "bald assertions" or "legal conclusions" when

deciding a motion to dismiss.  In re Burlington Coat Factory Sec.

4

Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997) (citation omitted). "Dismissal of claims under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim upon which relief may be granted." Jakomas v. McFalls, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56.  Fed.R.Civ.P. 12(b).  An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment.  Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004) (citation omitted).[1]

_____

[1] "The rationale underlying this exception is that the primary problem raised by considering documents outside the complaint — lack of notice to the plaintiff — is dissipated where the plaintiff has actual notice and has relied upon the documents in framing the complaint."  Jones v. Intelli-Check, Inc., 274 F.Supp.2d 615, 625-26 (D.N.J. 2003) (citations omitted).

The plaintiff here has not opposed the motion to dismiss. Nonetheless, the Court must address an unopposed motion to dismiss a complaint for failure to state a claim on the merits. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991); see Marcial v. Rawl, No. 94-6709, 1995 WL 31614, at *2 n.1 (E.D. Pa. Jan. 25, 1995) (stating that simply because "a motion to dismiss is unopposed does not allow [a court] to fail to consider whether the complaint sets forth a viable cause of action").

## II. The Plaintiff's Title VII Claims

### A. Title VII

Title VII prohibits employment discrimination because of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  The plaintiff alleges that the defendants violated Title VII by (1) racially discriminating against her because, instead of promoting her to the SA2 Position, they promoted Cleary, a Caucasian, to the position, (2) subjecting her to a hostile work environment, and (3) retaliating against her "for filing discrimination complaints or opposing practices made unlawful under [Title VII]."  (Amended Compl., at 3-4.)

### 1. Racial Discrimination

To succeed on a claim of racial discrimination, a claimant must establish that she was the subject of purposeful discrimination.  Weldon v. Kraft, Inc., 896 F.2d 793, 796 (3d Cir. 1990).  To assert a prima facie case of discrimination, the

plaintiff must allege that (1) she is a member of a protected group; (2) she is qualified for the position; (3) she was subject to an adverse employment action; and (4) other similarly situated individuals not in the protected group received better treatment. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

   2.   Unlawful Retaliation

   The plaintiff maintains that the defendants have retaliated against her in violation of Title VII after she reported discriminatory conduct.  The anti-retaliation section of Title VII provides in pertinent part:

   It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  The plaintiff, to assert a prima facie case of retaliation under Title VII, must allege that (1) she was engaged in a protected activity known to the employer; (2) she was thereafter subjected to an adverse employment decision by the employer; and (3) there was a causal link between the protected activity and the adverse employment decision.  Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).  To satisfy the causation element, the plaintiff must raise the inference that her protected activity was the likely reason for the adverse action.  Ferguson v. E.I. DuPont de Nemours & Co., 560 F.Supp.

1172, 1200 (D. Del. 1983).  The plaintiff's ultimate burden in a retaliation case is to convince the fact-finder that retaliatory intent had a determinative effect on the employer's decision. Saner v. Synthes, 204 F.3d 494, 501 (3d Cir. 2000).

An "adverse employment action," as described in the third prima facie element, "alters the employee's compensation, terms, conditions, or privileges of employment."  Cortes v. Univ. of Med. & Dentistry, 391 F.Supp.2d 298, 312 (D.N.J. 2005) (citations omitted).  As such,

> while a discharge or a refusal to hire would be actionable adverse employment actions, "when one goes beyond that, the conduct must be serious and tangible enough to materially alter an employee's terms and conditions of employment or adversely affect her status as an employee."  Not everything that makes an employee unhappy 'qualifies as [an adverse employment action], for [o]therwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'"

Id. (internal citations omitted).  Rather, a tangible employment action "in most cases inflicts direct economic harm."  Burlington Indus. v. Ellerth, 524 U.S. 742, 762 (1998).

> 3.   Hostile Work Environment Claim

To assert a prima facie case of hostile work environment, the plaintiff must allege: (1) that she suffered intentional discrimination because of her membership in a protected class; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected her; (4) that the discrimination would have detrimentally affected a reasonable

8

person in the same position; and (5) the existence of respondeat superior liability. West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995). Also, the plaintiff must show harassing behavior "sufficiently severe or pervasive" to alter the conditions of her employment. Pa. State Pol. v. Suders, 542 U.S. 129, 133 (2004) (citations omitted). A court must consider the totality of the circumstances when determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990). Factors which may indicate a hostile work environment include (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Sys., 510 U.S. 17, 23 (1993).

### B. The Plaintiff's Prima Facie Case of Racial Discrimination

The plaintiff alleges that she was denied a promotion to the SA2 Position because of her race. The defendants, on the other hand, argue that the plaintiff has not "raise[d] any allegations that she was not promoted during April 24, 2003 through August 6, 2003 because of her race." (Defs. Br., at 3.) The Court finds that the plaintiff has asserted a prima facie case of racial discrimination.

The plaintiff alleges that (1) she is African-American (and a member of a protected class), (2) she was qualified for the

9

position, as she received a #1 ranking in the "Notification of Eligibility for [the SA2 Position]," (3) she was subject to an adverse employment action because she was denied the promotion, and (4) the SA2 Position was filled by a Caucasian candidate. (Amended Compl., at 2-5.)  Thus, the plaintiff has alleged a prima facie case of racial discrimination.  The defendants' arguments that the plaintiff does not include facts within the time period is without merit.  The 9-9-03 EEOC Charge claims that the plaintiff suffered discrimination by not being promoted to the SA2 Position, and that she was transferred to a temporary position under Blazovsky.  (9-9-03 EEOC Charge.)  As mentioned above, the amended complaint includes similar allegations.  Even though the plaintiff does not attach the same date to the onset and end of the discrimination, the substantive allegations supporting the claim are repeated in the amended complaint.

All of the defendants' arguments here essentially attack the factual accuracy of some of the plaintiff's allegations in the amended complaint.  These are improper arguments to support a motion to dismiss under Rule 12(b)(6).  The notice pleading standard of Rule 8(a) requires that a complaint provide only a short and plain statement showing a right to relief, "not a detailed recitation of the proof that will in the end establish such a right."  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 564 (3d Cir. 2002); see Weston v. Pa., 251 F.3d 420,

429 (3d Cir. 2001) (explaining that a complaint need not plead law or match facts to every element of a legal theory to survive a motion to dismiss under Rule 12(b)(6)).  Furthermore, complaints in employment discrimination cases must satisfy only the simple requirements of Rule 8(a).  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002) (holding that "an employment discrimination complaint need not include [specific facts establishing a prima facie case of discrimination under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)] and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief'").

"Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits."  Swierkiewicz, 514 U.S. at 515.  Instead, the simplified notice-pleading standard of Rule 8(a) "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Id. at 512 (citations omitted).  Here, as illustrated above, the amended complaint provides sufficient allegations to satisfy each of the elements of a racial discrimination claim under Title VII.  Also, although the plaintiff does not match the dates stated in the 9-9-03 EEOC Charge with those in the amended complaint, the substance of the allegations are similar.  Moreover, as discussed infra, the scope

11

of the EEOC investigation would have necessarily included the circumstances surrounding the selection of Cleary for the SA2 Position in April 2003 and the plaintiff's temporary reassignment under Blazovsky in August 2003.  Accordingly, the Court will deny the part of the defendants' motion seeking to dismiss the plaintiff's Title VII claim insofar as they argue that the plaintiff has failed to set forth a prima facie case of racial discrimination under Title VII.

**C.   The Scope of the 9-9-03 EEOC Charge**

The defendants also argue that the plaintiff raises claims in the amended complaint that "are separate and distinct from those raised in her [9-9-03] EEOC Charge."  (Defs. Br., at 7.) Specifically, the defendants assert that whereas the 9-9-03 EEOC Charge "solely list[ed] [racial] discrimination . . . relating to her application for promotion to the [SA2 Position]," her amended complaint includes claims for hostile work environment and retaliation.  (Id.)  Therefore, the defendants contend that the "plaintiff should be limited to asserting racial discrimination for [the Lottery's] alleged failure to promote her during the period of time between [April 24, 2003, and August 6, 2003.]" (Id. at 8.)

A plaintiff is generally required to raise all claims with the EEOC before bringing an action in federal court.  Individuals alleging discrimination "must first attempt to resolve the matter

informally by consulting with a counselor" to provide the EEOC with "notice and a chance, if appropriate, to settle [the matter]." Red v. Potter, No. 03-2241, 2005 WL 2600242, at *5 (D.N.J. Oct. 13, 2005). Furthermore, "suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle." Anjelino v. N.Y. Times Co., 200 F.3d 73, 93 (3d Cir. 1999). Thus, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976). Nonetheless, the Court may consider complained-of events subsequent to a filed complaint if the events are "fairly encompassed within that [charge], either where the incident (1) falls within the scope of a prior EEOC [charge], or (2) falls within the scope of the EEOC investigation which arose out of it." Gaston v. N.J. Dep't of Law & Pub. Safety, Div. of State Pol., No. 05-3006, 2006 WL 891270, at *4 (D.N.J. Apr. 5, 2006) (citations and internal quotations omitted); see Sandom v. Travelers Mort'g Servs., 752 F.Supp. 1240, 1247 (D.N.J. 1990) (explaining claims not mentioned in EEOC charge but permitted by district courts include, inter alia, "[claims] closely related to conduct alleged in the charge (such as a claim of retaliation for filing the charge)").

13

The plaintiff filed her EEOC Charge on September 9, 2003, claiming that she was discriminated against because of her race. (9-9-03 EEOC Charge.)  The 9-9-03 EEOC Charge indicated that the dates of the alleged discrimination occurred from April 24, 2003, until August 6, 2003.  (Id.)  Also, the 9-9-03 EEOC Charge only describes the circumstances surrounding the Lottery's failure to promote her to the SA2 Position, and does not describe any retaliatory practices by the defendants for any of the plaintiff's activities, nor include a hostile work environment claim.

The amended complaint contains approximately 40 separate paragraphs describing the plaintiff's history as an employee at the Lottery and her activities as an employee from the Lottery from February 3, 2004, until May 25, 2005.[2]  The plaintiff, throughout these paragraphs, describes the allegedly (1) hostile work environment created by the defendants, and (2) retaliatory acts committed by the defendants.  The plaintiff contends that, inter alia, the defendants (1) attempted to instigate confrontations between the plaintiff and co-workers, (2) set up unsolicited meetings between the plaintiff and the Treasury's

---

[2] The Court notes that the plaintiff submitted an "addendum to [the] amended complaint" on February 21, 2006.  (Dkt. entry no. 17.)  The Court has not considered this submission because it is not a permissible pleading under the Rules or the Local Civil Rules, nor is it an second amended complaint because the plaintiff (1) may not amend her pleading as of right since the defendants have moved to dismiss, and (2) has not requested leave of Court or received written consent from the defendants to amend.  Fed.R.Civ.P. 7, 15(a).

Affirmative Action Officer, (3) removed and hid the plaintiff's security badge, (4) tried to get the plaintiff to transfer to another position, and (5) created false disciplinary charges.

"Although such acts might sometimes be within the scope of claims for racial discrimination[, hostile environment,] and retaliation, that is not true in this case." Red, 2005 WL 2600242, at *5.  In the 9-9-03 EEOC Charge, the plaintiff did not allege that the defendants harassed her or subjected her to a hostile work environment.  Instead, she alleged only discrimination concerning one specific incident: the Lottery's failure to promote her to the SA2 Position.  Also, all of the plaintiff's allegations concerning harassment, hostile work environment, and retaliation, occurred after the date that the EEOC issued the right to sue notice.  The EEOC issued the Notice on February 2, 2004, and the plaintiff's specific allegations of hostile work environment and retaliation began on February 3, 2004.  Thus, these allegations could not have been part of the EEOC investigation into the plaintiff's claims.

The plaintiff also fails to provide substantive allegations that the defendants retaliated against her for filing the 9-9-03 EEOC Charge.  The plaintiff does include a conclusory statement that the defendants retaliated against her "for filing discrimination complaints or opposing practices made unlawful under [Title VII]."  (Amended Compl., at 4.)  However, other than

this one statement, the plaintiff fails to allege that any of the defendants' actions from February 2004 until May 25, 2005, were in retaliation to her filing the 9-9-03 EEOC Charge or bringing the current action.  Moreover, the plaintiff — in support of her retaliation claims — has not asserted that she suffered an "adverse employment action."  The only possible adverse employment action included in the amended complaint was the plaintiff's reassignment to work under Blazovsky's supervision. However, this reassignment occurred before the plaintiff filed her EEOC Charge and filed her complaint here and, as such, could not have been in retaliation for the plaintiff engaging in any protected activity under Title VII.

The plaintiff failed to provide the EEOC with notice that claims for hostile work environment or retaliation would be filed.  The EEOC was denied the opportunity to settle those claims at the administrative level and, thus, the plaintiff has failed to exhaust her administrative remedies with respect to such claims.  Also, the plaintiff has not asserted a cognizable claim for retaliation in response to the 9-9-03 EEOC Charge or bringing this action.  Accordingly, the Court will grant the part of the motion seeking to dismiss the plaintiff's claims of hostile work environment and retaliation.

### D.   Liability of the Individual Defendants

The plaintiff has asserted Title VII claims against the individual defendants.  The Court will dismiss all of the claims

under Title VII against the individual defendants because individuals may not be held liable under Title VII.

Title VII makes it unlawful only for an "employer" to discriminate.  42 U.S.C. § 2000e-2(a)(1).  Title VII defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person."  42 U.S.C. § 2000e(b).  Unless an individual qualifies as a plaintiff's "employer" as defined above, Title VII does not provide for individual liability.  See Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1077-78 (3d Cir. 1996) (declining to extend Title VII definition of "employer" to include individual employees).  Accordingly, to the extent that the plaintiff seeks to impose individual liability on the individual defendants for alleged racial discrimination or disparate treatment, they cannot be held liable under Title VII. Therefore, the Court will dismiss the plaintiff's Title VII claims against the individual defendants in their individual capacities.

The amended complaint does not designate whether the plaintiff is suing the individual defendants in their individual capacities or in their official capacities.  However, to the extent that the plaintiff contends that the individual defendants — specifically, Bauer, Jourdain, Matos, Blazovsky, or Kersey — could be held liable as a participants in the decision-making

process that formed the basis for the discrimination, the Court
finds that the plaintiff cannot maintain a Title VII claim
against the individual defendants in their official capacities.

Title VII does not permit official-capacity claims against
non-employer individuals.  See Newsome v. Admin. Off. of Courts,
51 Fed.Appx. 76, 78 n.1 (3d Cir. 2002) ("[I]t is settled that
Title VII does not provide for individual liability."); Cortes,
391 F.Supp.2d at 311 (dismissing Title VII claims against all
individual defendants because claims are not permitted by Title
VII).  There is "no basis for [distinguishing] between 'official'
and 'individual' suits in the statutory language of Title VII."
Schanzer v. Rutgers Univ., 934 F.Supp. 669, 678 n.12 (D.N.J.
1996); Cardoza v. Merion Cricket Club, No. 95-4055, 1996 WL
653397, at *5 n.8 (E.D. Pa. May 2, 1996); Behrens v. Rutgers
Univ., No. 94-0358, 1996 WL 570989, at *8 n.10 (D.N.J. Mar. 29,
1996).  Moreover, there is no individual capacity/official
capacity dichotomy as "[a] suit against a supervisory employee in
her official capacity is a suit against the individual in name
only; it operates in all respects as a suit against the
employer."  E.g., Schanzer, 934 F.Supp. at 678 n.12; see Foxworth
v. Pa. St. Police, No. 03-6795, 2005 WL 840374, at *5 (E.D. Pa.
Apr. 11, 2005) (explaining, in Title VII case against a public
employer and employees, that "there is complete symmetry between
a governmental agency as a defendant and the officers who hold

positions in that governmental entity in their official capacities").[3]  "If the defendant is not [the] plaintiff's employer, . . . it is irrelevant whether that person was acting in an official or individual capacity, for a Title VII suit may not be properly maintained against the individual." Schanzer, 934 F.Supp. at 678 n.12.  As such, "[t]he relevant threshold question is not whether the defendant acted in an official capacity, but whether the defendant is the plaintiff's employer under the statute." Id.[4]

_____

[3] See also Clarke v. Whitney, 907 F.Supp. 893, 895 (E.D. Pa. 1995) ("[A] suit against a defendant in his or her official capacity is simply another way to sue the defendant's employing entity."); Bishop v. Okidata, Inc., 864 F.Supp. 416, 423 (D.N.J. 1994) (rejecting distinction in context of ADA case); Doe v. William Shapiro, Esq., P.C., 852 F.Supp. 1246, 1252-53 (E.D. Pa. 1994) (discussing distinction in Title VII and ADA case; noting official capacity suits originated from "color of law" requirement in 42 U.S.C. § 1983 cases, and holding dichotomy was "a distinction without a basis in the law").

[4] The rationale in previously permitting suits to continue against individual defendants in their official capacities after dismissing them in their individual capacities was, "in effect, to maintain the suit against that party for purposes of discovery." E.g., Schanzer, 934 F.Supp. at 678 n.12 (citing Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1241 n.2 (2d Cir. 1995)).  Moreover,

> official capacity suits have traditionally been permitted to avoid Eleventh Amendment and sovereign immunity problems that might arise if a plaintiff were to sue a government entity directly. . . . [B]ecause employers are subject to suit under Title VII, [t]here is no need for such official capacity litigation. . . . [T]he function of courts is to provide a remedy against those that Congress has determined should be held liable for the plaintiff's damages, not to affix moral blame. . . . If Congress has made a determination that individual employees should not be personally liable for acts of

None of the individual defendants are the plaintiff's "employer" under Title VII, nor has the plaintiff alleged as much.  The plaintiff has named her employer, the Lottery, as a defendant in this action.  Moreover, because the plaintiff has designated her actual "employer" as a defendant, she suffers no prejudice by the Court dismissing her official-capacity claims against the individual defendants.  See, e.g., Clarke, 907 F.Supp. at 895 (concluding that because the plaintiff's former employer "is already a defendant to this action, there is no loss to [the plaintiff]" if the court dismisses official-capacity claim against individual defendant); see also Foxworth, 2005 WL 840374, at *4 (explaining that plaintiff pursuing claims against employer and individual defendant in individual's official capacity "would be redundant").  Accordingly, the Court will also dismiss the plaintiff's Title VII claim insofar as she asserts claims against the individual defendants in their official capacities as managers and officers of the Lottery.

---

discrimination, it is not for the courts to second guess that judgment and provide some type of moral sanction against those who engaged in prohibited conduct. . . . [A] defendant bears financial and emotional expenses in civil litigation and a court should force a person to bear those costs only if the end of that litigation may result in an award of damages against that person.

Gray v. Shearson Lehman Bros., Inc., 947 F.Supp. 132, 136 (S.D.N.Y. 1996) (internal quotations and citations omitted).

### III. The Plaintiff's NJLAD Claim

The plaintiff also contends that the defendants violated NJLAD by unlawfully discriminating against her.  The defendants assert that the plaintiff's NJLAD claim against the Lottery is barred by the Eleventh Amendment.  (Defs. Br., at 8-9.)  Further, the defendants argue that NJLAD does not provide for individual liability unless the employer is first found to be liable.  (Id. at 10-12.)

### A.   NJLAD

NJLAD prohibits, inter alia, unlawful discrimination by an employer.  N.J.S.A. § 10:5-12a.  The NJLAD defines an employer as "includ[ing] all persons as defined in subsection a . . . unless otherwise specifically exempt under another section of [NJLAD], and includes the State, any political or civil subdivision thereof, and all public officers, agencies, boards or bodies."  N.J.S.A. § 10:5-5e.  Subsection a. defines a "person" as "one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries."  N.J.S.A. § 10:5-5a.  "[A]n individual supervisor[, however] is not defined as 'an employer' under [NJLAD]."  Tarr v. Ciasulli, 853 A.2d 921, 928 (N.J. 2004).  "Nevertheless, it is unlawful '[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD].'"  Id.

21

**B.    The Lottery's Immunity Under the Eleventh Amendment**

The Eleventh Amendment bars the plaintiff's claims against the Lottery.  Although the motion is made pursuant to Rule 12(b)(6), the defense of sovereign immunity is more appropriately decided under Rule 12(b)(1), which deals with subject matter jurisdiction.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984) (holding that absent clear waiver by state of its sovereign immunity under Eleventh Amendment or congressional abrogation of that immunity, federal courts lack subject matter jurisdiction to hear claims brought by individuals against states).  Also, even if the parties do not dispute subject matter jurisdiction, the Court has an obligation to consider the question sua sponte.  See, e.g., Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 278 (1977).  The party that invokes the court's jurisdiction bears the burden of persuasion when the subject matter jurisdiction of the court is challenged. Rudolph v. Adamar of N.J., 153 F.Supp.2d 528, 533 (D.N.J. 2001) (citations omitted).

1.    The Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The

22

Eleventh Amendment bars suits against any state or its agencies in federal court by that state's own citizens as well as by citizens of other states.  Edelman v. Jordan, 415 U.S. 651, 662-63 (1974).  Eleventh Amendment immunity "applies regardless of whether a private plaintiff's suit is for money damages or some other type of relief."  Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 765 (2002); see Seminole Tribe v. Florida, 517 U.S. 44, 58 (1996) (finding that type of relief sought is "irrelevant to the question whether the suit is barred by the Eleventh Amendment").

> 2.   The Lottery's Potential Immunity

The Lottery is a division within the New Jersey Department of Treasury.  See N.J.S.A. § 5:9-4 ("There is hereby established in the Department of the Treasury a Division of the State Lottery, which shall include a State Lottery Commission and a director.")  Also, the New Jersey Department of Treasury is an agency within the executive branch of the New Jersey state government.  See N.J.S.A. § 52:18A-1 (establishing "in the executive branch of the State Government a principal department which shall be known as the Department of the Treasury").  Therefore, because of the Lottery's status under State law as part of the State executive branch, any monetary judgment against them would be paid by the State treasury.  Accordingly, the Lottery is an arm of the State and is eligible for Eleventh Amendment immunity.

      3.   None of the Exceptions to Eleventh Amendment
           Immunity Apply Here

There are only three "narrowly circumscribed" exceptions to Eleventh Amendment immunity: (1) abrogation by Act of Congress; (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law.  <u>MCI Telecomm. Corp. v. Bell Atl.-Pa.</u>, 271 F.3d 491, 503 (3d Cir. 2001).  Concerning the second exception, state consent, a state must "make[] a 'clear declaration' that it intends to submit itself [to federal court jurisdiction]."  <u>Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 675-76 (1999) (internal citation omitted).  Here, "[t]he State has not explicitly waived Eleventh Amendment immunity for claims brought in federal court under the NJLAD."  <u>Bennett v. City of Atl. City</u>, 288 F.Supp.2d 675, 683 (D.N.J. 2003) (citing N.J.S.A. § 10:5-12(a)).  "Although the NJLAD clearly identifies the State as a potential defendant, . . . and authorizes private suits 'in Superior Court,' . . . it makes no mention of federal court."  <u>Garcia v. Richard Stockton Coll.</u>, 210 F.Supp.2d 545, 550 (D.N.J. 2002) (citing N.J.S.A. §§ 10:5-5(e), 10:5-13); <u>see</u> <u>also</u> <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 241 (1985) (explaining that "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation").  Thus, "New Jersey has not stated 'by the most express language' that it is open to private

24

suits under the NJLAD in federal court." <u>Garcia</u>, 210 F.Supp.2d at 550 (citations omitted).

The plaintiff, in addition to seeking money damages, has also requested certain declaratory and injunctive relief to, <u>inter alia</u>, (1) promote her to the position of "Secretary Assistant 1 Non-Steno," (2) remove Blazovsky "from any position allowing [her] to discriminate and retaliate against any employee," and (3) strike "all criticisms of [the plaintiff's] job performance and work conduct issued since July 14, 1992 . . . from all records." (Amended Compl., at 12.)  Thus, the Court will analyze whether the third exception to Eleventh Amendment immunity applies here.

The "broad grant of immunity [under the Eleventh Amendment] has been qualified by the judicial doctrine of <u>Ex Parte Young</u>, which allows suits against States in federal court seeking prospective injunctive relief to proceed only against state officials acting in their official capacities." <u>Doe v. Div. of Youth & Fam. Servs.</u>, 148 F.Supp.2d 462, 483 (D.N.J. 2001) (citing <u>Ex Parte Young</u>, 209 U.S. 123 (1998)).  To determine whether the third exception to Eleventh Amendment immunity applies, the Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" <u>Pa. Fed'n of Sportsmen's Clubs v. Hess</u>, 297 F.3d 310, 324 (3d Cir. 2002)

(citation omitted).  However, as discussed above, the plaintiff
has included a litany of allegations that are not within the
scope of her EEOC Charge.  All of the plaintiff's requests for
injunctive or declaratory relief relate to these outside-the-
scope-of-the-EEOC-Charge allegations.[5]  Accordingly, the third
exception to Eleventh Amendment immunity is inapplicable here.

### C.   The Individual Defendants' Liability Under NJLAD

The plaintiff has also asserted NJLAD claims against the
individual defendants.  The individual defendants contend that
they cannot be found liable under NJLAD because the Lottery, as
principal, is immune from liability under the Eleventh Amendment.
(Defs. Br., at 10-12.)  The Court agrees.

NJLAD provides that it is unlawful "for any person, whether
an employer or employee or not, to aid, abet, incite, compel or
coerce the doing of any of the acts forbidden under this act, or
to attempt to do so."  N.J.S.A. § 10:5-12(e).  The plaintiff, to
demonstrate that an employee is liable as an aider or abettor,
must show: "(1) the party whom the defendant aids must perform a
wrongful act that causes an injury; (2) the defendant must be
generally aware of his role as part of an overall illegal or
tortious activity at the time that he provides the assistance;

---

[5]  See Cardenas v. Massey, 269 F.3d 251, 265 (3d Cir. 2001)
(concluding plaintiff's request for injunction requiring
defendant to alter performance evaluations and pay-grade
classifications "to reflect not what they actually were but what
they would have been without discrimination, . . . we [have found
no precedent] granting equitable relief which would require a
public agency to complete its records counterfactually").

[and] (3) the defendant must knowingly and substantially assist the principal violation." Hurley v. Atl. City Pol. Dep't, 174 F.3d 95, 127 (3d Cir. 1999) (citations omitted); see Tarr, 853 A.2d at 929 (adopting rationale and test set forth in Hurley); see also Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir. 1998) ("[A] person is liable for harm resulting to a third person from the conduct of another when he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.") Also, the plaintiff must demonstrate that

> the aider and abettor acted in relation to a principal, here, the employer[.] Once [the employer] has been found liable, the issue becomes whether under § 12(e), any employee is liable for aiding and abetting. Employees are not liable as aider[s] and abettor[s] merely because they had some role, or knowledge or involvement. Rather, the degree of involvement, knowledge and culpability required as a basis for liability is heightened [and must be] set above mere knowledge and/or implementation, lest a reverse respondeat superior liability could be created under the guise of aiding and abetting.

Failla, 146 F.3d at 159.

"[A]n individual employee can not be found liable for discrimination under NJLAD unless the employer is first found liable." Hanani v. State of N.J., No. 03-3111, 2005 WL 1308231, at *16 (D.N.J. May 31, 2005) (citing Failla, 146 F.3d at 149). Thus, because the Lottery, as principal, is immune from suit under the Eleventh Amendment, "it would be impossible to establish that the alleged aiders and abett[o]rs, [the individual defendants,] are liable because a predicate finding that the

[Lottery] is liable as a principal cannot be made."  See id.
(dismissing NJLAD claims against individual employee defendants
where NJLAD claim against New Jersey Department of Personnel was
barred by Eleventh Amendment).[6]  Accordingly, the Court will
grant the part of the motion seeking to dismiss the plaintiff's
NJLAD claim against the individual defendants as aiders and
abettors.

## CONCLUSION

The Court, for the reasons stated supra, concludes that (1)
the plaintiff has alleged a prima facie case of racial
discrimination under Title VII against the Lottery; (2) the Title
VII claims for hostile environment and retaliation are not within
the scope of the 9-9-03 EEOC Charge; (3) the plaintiff has not
alleged any acts of retaliation in response to the 9-9-03 EEOC
Charge or in bringing the present action; (4) even if the

---

[6] See also Monaco v. Am. Gen. Assurance Co., 359 F.3d 296,
307 n.15 (3d Cir. 2004) ("[I]nasmuch as we hold that the district
court correctly granted summary judgment to the corporate
defendants, any claim he brought against the individual
defendants for aiding and abetting fails as well."); Pitt v. Del.
River & Bay Auth., No. 99-3185, 2001 WL 1689880, at *22 (D.N.J.
Nov. 26, 2001) ("If the NJLAD does not apply to the employer
DRBA, then no individual aiding and abetting liability may be
found, because an employer's liability must be shown before any
supervisory liability for violations can exist."); Bishop v.
Inacom, Inc., No. 99-664, 1999 WL 1416919, at *8 (D.N.J. Dec. 1,
1999) (dismissing NJLAD claims against individuals for aiding and
abetting where plaintiff failed to state actionable claim against
employer).  But see Uwalaka v. State of N.J., No. 04-2973, 2005
WL 3077685, at *3 (D.N.J. Nov. 15, 2005) (finding that individual
defendants "may still be found liable for aiding and abetting
violations under [NJLAD], even though the State employer, with
whom they are accused of aiding and abetting, is immune from
liability under the Eleventh Amendment").

plaintiff had alleged a possible act of retaliation, she has not claimed that she suffered an adverse employment decision; (5) the plaintiff cannot maintain a Title VII claim against the individual defendants in their individual or official capacities; (6) the plaintiff's NJLAD claim against the Lottery is barred by the Eleventh Amendment; and (7) the NJLAD claim against the individual defendants is prohibited because the plaintiff cannot demonstrate that the Lottery, as principal, is liable. Accordingly, the Court will grant the part of the motion seeking to dismiss (1) the Title VII claims for hostile environment and retaliation against all of the defendants, (2) the Title VII claims against the individual defendants in their individual and official capacities, and (3) the NJLAD claim against all of the defendants. Further, the Court will deny the part of the motion seeking to dismiss the Title VII racial discrimination claim against the Lottery. The Court will issue an appropriate order and judgment.

                                                       s/ Mary L. Cooper
                                        **MARY L. COOPER**
                                        United States District Judge